Good morning. May it please the court. Janice Deaton on behalf of Petitioner Gerald Keeler. And I do expect to reserve a couple of minutes for my rebuttal. Your Honor, it's habeas. So under 2254, we have to look at Supreme Court decisions. And I found two that seem to be in point. And I want you to tell me if there's something else that changes the substance of what they say or if there's another one that is critical. Morris v. Slappy says that trial judges have broad discretion on matters of continuances, only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the rights of due process. And U.S. v. Gonzalez says that the trial court has wide latitude in balancing the right of counsel of choice against the needs of fairness and against the demands of its calendar. Those two cases are bad for you. Is there a good one? I agree that they're bad. And, in fact, Your Honor was on the panel, on the en banc panel in a case that I had almost 10 years ago regarding a continuance in the Ninth Circuit in the Southern District. Are you talking about the case where Judge Reinhart, Judge Betty Fletcher, and I dissented? No. I wish. This would be a much more fun argument if that were the case. No, that was United States v. Garrett. But in any event, I agree that those are difficult hurdles to overcome. I also believe, however, that this case, unlike – well, I believe that this case implicates the right to counsel. And I think that one of the first questions that might need to be addressed is there is no United States Supreme Court precedent establishing for a fact that in every probation violation that a probationer has a right to counsel. It is supposed to be considered under a case-by-case basis. Let's assume it. How do you get past your hurdle on due process? The hurdle regarding the myopic. The judge had some reason to deny a continuance. There had been a lot of them. On this one, he didn't think there was a real good excuse for not having taken care of business in terms of getting the new lawyer instead of the old lawyer. That's correct. Well, that's what the court held. There was only one continuance previously, at least my understanding of the record, and that was in the same month. That was earlier in July. This hearing occurred on July 30th. There was a continuance on July 2nd, and this would have been the second one. When Mr. Keillor arrived, when Petitioner Keillor arrived in court, there was a new public defender assigned to the case. There was a stand-in probation officer, if you will. The probation officer sent somebody over to handle the hearing that morning. Assuming the right to counsel. Correct. We have to look at holdings of Supreme Court decisions under 2254. What do you have that we should use besides Morris v. Slappy and Gonzales-Lopez? Well, I would look at Gagnon. I would still look, because there is no Supreme Court holding on a case regarding this kind of situation. I'm going to start all over. Because there is no Supreme Court precedent regarding this specific instance, we can still turn to Ninth Circuit case law to look at the factors. Can we? I thought 2254 said we can't. Well, I agree that. This is from State court. I agree that what Your Honor cited regarding we do have to decide whether the court was myopic and was unreasonable and arbitrary, but I still think that we weigh the rights and the interests of the petitioner in that equation. Even assuming, as Judge Kleinfeld has done, even assuming all the things that you want in your favor, it's hard for me to see where your client was truly prejudiced, because when the continuance didn't occur, he was represented by the counsel. And so far as I can see in the record, there is no indication that that counsel was deficient in any way. Do you agree with that? Well, that puts me in a very challenging position, because in this case, I think showing prejudice, first of all, Mr. Keillor, Petitioner Keillor, did retain counsel at the sentencing hearing. Right. So we do know that he was serious. It wasn't just for purposes of delight.  So I think then we go back to perhaps Justice Scalia's comments regarding the right to counsel. And, again, we're not talking about the right to appointed counsel. We're talking about the right to retain counsel. I understand that. But even putting aside the AEDPA issues that Judge Kleinfeld has appropriately raised here, under any case law that I'm aware of, certainly any statutory law, the fact that your client cannot under any circumstances show prejudice, made no showing of prejudice, and he didn't complain at all about I guess it was Ms. Landy who represented him in this hearing, how can you possibly overcome your burden on this? Well, Judge Smith, I believe, first of all, that even Ms. Landy said, we need a continuance to subpoena documents. And I understand that. But the reality is the district judge has a lot of discretion, right? Yes. Yes, the judge does have a lot. And particularly in a matter of continuance, because the judge gets to organize his or her courtroom in a reasonable way. There's been previous continuances, and the judge felt given what had happened in this case that that wasn't necessary. But, you know, had he been there all by himself and didn't know how to argue the points and so on, that would be one thing. But there was somebody there. And he didn't say anything afterwards. This woman was terrible. She was a terrible lawyer. She didn't do this. She didn't do that. There's no Strickland showing at all. And I don't know that Strickland is. . . That doesn't even have to be Strickland. We'll just say prejudice. Right. I agree that he did not complain about the attorney. However, both the attorney, Ms. Landy, did ask for a continuance to be able to subpoena the records from the VA, as well as when Kerry Ranshaw, I believe, the probation officer, was a stand-in. Mr. Petitioner Keillor also asked that his actual probation officer be allowed to come. In his testimony, he did deny the dirty tests, and that was the reason. So I guess that would be the prejudice that he was trying to establish. Did he have proof? I know he had numerous dirty UAs. Did he have proof that a couple of the ones he was being revoked for weren't dirty? I thought all he could show was, as he put it, that the technicians who administered them were kids who didn't have a lot of experience. At the time of the hearing, because no continuance was granted, what's on the record is only Mr. Petitioner Keillor's testimony that he did not have dirty tests. You're correct. On the record at the time. That's not enough, is it? Just his own subjective statement without some kind of a backup from the medical folks? I guess part of the catch-22 here is exactly that, that that's why he wanted the continuance was so that he could actually subpoena the records from the VA to present to the court so that the court would have accurate records. On probation, sentencing is about as important as the revocation hearing, and he had time before sentencing to subpoena records, and he had a lawyer of his choice. So did he put in something at sentencing that would have shown he wouldn't have been revoked if he'd just been given a little more time? That's a very good question, Your Honor, and he did not at the sentencing. Do you want to save any of your time? You're down to about a minute and a half. I have a question. I'm sorry. The probation, his true probation officer didn't testify. Now, if they continued to allow her to come, what would the consequences of that have been? Petitioner Keillor had established a relationship with his probation officer, and again, on the record, that's a very difficult question to answer. But the purpose of having the probation officer was, again, for the accuracy of the dispute, the accuracy of the dirty test, the accuracy of Petitioner's compliance with probation. Well, I don't think anyone denies that there would have been at least one dirty test. Is that right? On the record, as it stood at the time of the hearing, that's correct. I think her testimony, if she were to give it that way, could be helpful to say that he needed a higher level of treatment. Now, is that available or is it not available, or could he get more of it in prison, just looking at the consequences of what went on here? As a practical matter, could there have been any help for him? Yes. There are higher levels of treatment centers than the one that he was participating in. He was an outpatient. But how would he have gotten that, even if people said it was needed? The court could have imposed it as a further condition of probation. Thank you. Okay. We'll give you a minute to rebut when we get done, okay? Thank you. Thank you, Mr. Chief Justice. We'll hear from the government. Good morning, Your Honors. May it please the Court. Anthony DiSilva, Deputy Attorney General, for the respondent. As the district court properly found, this was not a case of unreasoning arbitrary insistence on expeditiousness. It didn't myopically go forward with the probation revocation hearing. And the district court did analyze all the relevant U.S. Supreme Court cases and come to the conclusion that the denial of the petition was not contrary to or in reasonable application of established United States Supreme Court precedent, either on the claim that the continuance violated due process right to a retained counsel. I'm a little confused. I remember reading something, and I can't remember exactly where it comes up in the timing, that two out of three of the dirty UAs weren't dirty. Was there evidence of that? That two out of three weren't dirty? Were not dirty. Was there evidence of that, or was it just speculation based on the training and experience and age of the technicians? I think that was part of it, Your Honor. I think that the trial court and the probation took into consideration Mr. Keillor's account of what may have occurred and took a look at that and may have decided that those two were not established by the preponderance of the evidence, potentially. And so then went forth and decided the other two issues, which were being excluded from the drug treatment program because of the positive test, and also the new arrest for the possession of the crack pipe, which were proved by the preponderance insufficient to revoke the probation in this case. Is it the position of the government that because there are no Supreme Court cases directly on point here, that under AEDPA that's the end of the story? That's correct, Your Honor, as far as the right to counsel, since there are no, yes, no established Supreme Court. It's kind of a pick-an-egg thing, as your opposing counsel indicated. If you don't have this, you can't get to that, so we never get to that from your perspective. Yes. As Judge Kleinfeld correctly pointed out, the cases on the continuance are Morris and Gonzalez-Lopez, and as to probation revocation, you just have the general minimum standards of due process under Gagnon, and those are the relevant Supreme Court authorities, and they were analyzed by the district court. So unless this court has any further questions, I would submit on the briefing. Well, let me ask, just as a practical matter, what do we do with someone who is addicted? You could send him back to prison, and probably he won't get treatment there. They'll probably put him out on probation again, and the same thing will occur. Aren't there some kind of positive things that the state can do, and really almost an obligation to try to do something to put this guy into treatment, rather than just back into jail? That is correct, Your Honor, and I think under Proposition 36, that was tried. There was drug treatment that continued, and in the history, he was in an outpatient program at the Veterans Association. They were trying to get him, potentially his counsel was trying to get him into the Veterans Village of San Diego, which is an inpatient program, but positive drug tests continued. A domestic violence issue, as his first deputy public defender tried to get that resolved so that he could continue in inpatient. So there were many, many efforts, and Proposition 36 exists to try to get someone who is addicted into drug treatment instead of state prison, and I believe that is the main avenue, Your Honor. Is Proposition 36 still in effect, or is there no funding for it? I believe it's still in effect, and as far as funding, Your Honor, I could only speculate. What's Proposition 36? I'm not a Californian. I'm sorry, Your Honor. It is instead of imposing a criminal sentence, the defendant is referred to drug treatment, which is what was tried. There was a guilty plea. There were two cases. There was a guilty plea on possession for cocaine on the two different cases. There was also a strike prior that was admitted to, which had a large sentencing consequence, and an admission that one of those offenses occurred while he was out on bail. So instead of imposing sentence, the trial court did try to send him into the avenue of getting drug treatment. Any other questions from my colleagues? Thank you very much. Thank you, Your Honor. We'll give the appellate a minute to respond. Thank you, Your Honor. I have nothing to rebut at this time, so unless the court has any questions, I'll submit. Very good. Thank you both for your argument. The case of Keillor v. Sierra Conservation Center is submitted, and we will next hear argument in the case of Nurseman v. Astro.
judges: Fletcher, Kleinfeld, Smith